■ In the Matter of BRIGHTWATERS RACQUET & SPA, INC., Respondent. THOMAS F. HARTNETT, as Commissioner of Labor, Appellant.—Mikoll, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed December 28, 1989, which, upon reconsideration, ruled that the experience rating account of Eastern Racquet Sports Holding Company should not be transferred to the employer.

This case brings on for review the Unemployment Insurance Appeal Board's decision overruling the Commissioner of Labor and holding that there should not be a transfer of the experience rating account of Eastern Racquet Sports Holding Company (hereinafter ERS) to Brightwaters Racquet & Spa, Inc. (hereinafter BRS) pursuant to Labor Law § 581 (4). The Board concluded that from April 1, 1984 to August 31, 1984 BRS merely managed the facility on behalf of ERS which continued as owner. The Board also determined that after September 1, 1984, when ERS sold the facility to BRS, all four negative conditions of Labor Law § 581 (4) (c) were satisfied

and that no transfer occurred. This appeal by the Commissioner ensued.

The Commissioner contests the determination contending that there is no evidence in the record to support the finding that BRS agreed to manage the facility for ERS as of April 1, 1984. It urges that BRS took over the business for profit with its own employees as of April 1, 1984 and continued it until August 31, 1984 under the name of Armitaj Racquet & Health Spa, and that all of the negative conditions of Labor Law § 581 (4) (c) did not exist to vitiate the transfer of the experience rating factor to the new concern. It is further urged that once a transfer of the experience rating occurred on April 1, 1984, the predecessor's account ceased to exist. The Commissioner claims that the subsequent transfer of the business by sale to BRS did not permit the termination of the effects of the April 1, 1984 transfer and, therefore, the application of the negative conditions of Labor Law § 581 (4) (c) to the situation as it existed after the closing was improper.

The record discloses that Tom Jackowich, president of BRS, brought together a consortium of investors to purchase ERS, a faltering concern. He described the interim agreement, covering the period April 1, 1984 to August 31, 1984, as not clearly defined. During this time it was orally agreed that BRS would operate the place using the name Armitaj Racquet & Health Spa. The old employees were replaced with new ones. No changes in the operation or nature of the club were made as the management neither owned the club nor had any rights to do so. BRS paid the payroll. It was agreed that any profits from this period would inure to ERS if the deal did not close and, if there was a closing, profits or losses would inure to BRS. The former president of ERS continued contact with the club, checking as to the business. ERS continued to maintain the insurance on the premises. BRS paid on ERS' mortgage pending closing and it honored all old existing memberships of ERS. ERS' phone was retained by Armitaj.

There should be an affirmance. There is substantial evidence to support the Board's determination that the arrangement between ERS and BRS was in reality a management agreement. Thus, there was no transfer on April 1, 1984. After the closing on August 31, 1984, BRS did not continue or resume its predecessor's business and the Board correctly determined that no transfer occurred on that date as well. The Board's construction and application of the term "transfer" has a rational basis and should not be disturbed (see,

*Matter of Management Data Communications Corp. [Ross],* 86 AD2d 936, 937, *lv denied* 56 NY2d 506).

Decision affirmed, with costs. Weiss, J. P., Mikoll, Yesawich, Jr., Levine and Mercure, JJ., concur.